# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:11CV139-RLV

| | |
|---|---|
| **MARX INDUSTRIES, INC.** )<br>　　　　Plaintiff, )<br> )<br>　　　v. )<br> )<br>**CHESTNUT RIDGE FOAM, INC.** )<br>　　　　Defendant. )<br>_____) | **MEMORANDUM and ORDER** |

**THIS MATTER** is before the Court on a Motion to Dismiss (Doc. 3) by Defendant Chestnut Ridge Foam, Inc. ("CRF"), pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. The parties have conducted discovery on the issue of personal jurisdiction and have filed briefs, reply briefs, affidavits, and other discovery materials to support their respective positions on the motion now before this Court, which is ripe for disposition. The Court concludes, for the reasons discussed below, that it has personal jurisdiction over CRF and an actual controversy exists in this case. Therefore, CRF's Motion to Dismiss will be **DENIED**.

## I. BACKGROUND

Plaintiff Marx Industries, Inc. ("Marx") is incorporated in North Carolina, with its principal place of business in Granite Falls, North Carolina. Defendant CRF is a Pennsylvania corporation with its principal place of business in Latrobe, Pennsylvania. Both parties manufacture foam products and compete for customers in North Carolina in the foam manufacturing industry.

Prior to the initiation of this action by Marx, CRF commenced a lawsuit in Pennsylvania against another foam manufacturing company, Innovative Foam Products ("IFP"). In the Pennsylvania suit, CRF asserted that IFP misappropriated trade secrets regarding CRF's process and operation of certain equipment used to manufacture foam products.[1]

In early 2011, as a result of IFP's insolvency, Marx purchased the equipment previously belonging to IFP – the same equipment at issue in the earlier Pennsylvania litigation.[2] (Compl. 12, 13.) In connection with the equipment purchase, Marx entered into a Confidential Agreement ("Agreement") with IFP in which IFP represented to Marx that CRF "does not possess trade secrets relating to the equipment." (Compl. 25.)

Defendant CRF, believing that its "competitively sensitive operational information may have been transferred to Marx," wrote the President of Marx on April 22, 2011, and asked Marx "to confirm that [Marx] did not intend to use [CRF's] trade secrets to compete unfairly against Chestnut Ridge." (Doc. 9, at 2. / Compl. Exh.2). On May 5, 2011, Marx, through counsel, responded to the letter from CRF, asking for clarification. (Compl. 17 / Exh. 3) On May 18, 2011, counsel for CRF sent a second letter, detailing CRF's concerns and threatening that CRF was willing to "take any and all necessary legal actions to protect its confidential proprietary information and trade secrets."[3] (Doc. 1, at 21. / Comp. Exh. 4)

---

[1] The record does not include copies of pleadings from CRF's Pennsylvania lawsuit against IFP. In addition, the record does not identify the maker of the equipment or explain whether CRF had a role in its design. As a result, it is difficult to fully ascertain the nature of CRF's proprietary claim.

[2] Marx actually purchased the equipment from Georgia Coastal Bank, IFP's secured creditor. (Compl. 9, 10, 14.) At the time of Marx's purchase, the equipment had apparently been moved to Georgia. (Compl. 11)

[3] According to the Complaint, CRF later commenced additional lawsuits in Pennsylvania against various third party entities located in Georgia after sending similar demand letters. (Compl. 21.)

On August 31, 2011, Marx filed suit in the North Carolina General Court of Justice, Caldwell County Superior Court, against CRF seeking declaratory judgment pursuant to the North Carolina Uniform Declaratory Judgment Act, N.C. Gen. Stat. §§ 1–253 *et seq.* (Doc. 1) Marx seeks a declaratory judgment holding that use of the foam manufacturing equipment purchased from IFP's creditor did not constitute a misappropriation of trade secrets purportedly held by any competitor (*i.e.*, CRF). (Id.) Marx also seeks damages from CRF for unfair competition, unfair trade practices under N.C. Gen. Stat. § 75-1.1, and tortious interference of Marx's Agreement with IFP. (Id.)

On September 30, 2011, CRF removed the suit to this federal district court pursuant to 28 U.S.C. § 1441. (Doc. 3.) CRF simultaneously filed a Motion to Dismiss, arguing that this Court lacks personal jurisdiction over CRF and that there is no controversy sufficient to support a claim for declaratory relief. (Id.) Limited discovery to probe the jurisdictional issue was ordered on December 16, 2011. (Doc. 12.)

The following facts are taken from the Complaint, the briefs of the parties, and the deposition testimony of CRF's corporate representative, Carl Ogburn. From 2007 to 2011, CRF had, on average, between thirteen and seventeen North Carolina-based customers (Doc. 19 - 11), including municipal public transportation departments in North Carolina (Doc. 19, Ex. 13.) From 2007 to 2011, North Carolina "was in the top 10 states (and some years top 5 states) to which [CRF] sold products 3 or 4 years." (Doc. 19 - 10.) During jurisdictional discovery, CRF's Rule 30(b)(6) Deponent ("Deponent" or "Ogburn") testified that Chestnut Ridge's total annual revenue for the years 2007 to 2011 ranged from $18 million to $22 million. With regard to sales

to North Carolina-based customers, Marx's counsel asked Deponent, "On any given year, does North Carolina account for 10 to 20 percent of Chestnut Ridge's business, sales to North Carolina?" Mr. Ogburn replied, "Yeah, I think so." *Id.*[4] In that same time frame, CRF's purchases from North Carolina suppliers ranged from $3 million to $4.1 million annually. *Id.* These purchases represented between 20% and 31.5% of total annual purchases. As much as $3.8 million in purchases were from CRF's single largest supplier in North Carolina.

Additionally, several of CRF's employees and representatives have made at least one trip annually to North Carolina to visit both customers and vendors. (Doc. 19, Ex. 21.) There is evidence that CRF maintains no office in North Carolina and has had no salespeople, employees, agents, or representatives in North Carolina since at least 2008. CRF has not applied to do business in North Carolina and has not appointed an agent for service of process in the forum state. CRF advertises in some national publications and trade journals, accessible by North Carolina residents. CRF also maintains social media accounts, and evidence indicates that none of these accounts actively direct activity to or from North Carolina.

## II. STANDARD OF REVIEW

Questions of jurisdiction are answered by a two-step analysis: (1) the court must determine whether the North Carolina long-arm statute confers personal jurisdiction, and (2) the court must determine whether the exercise of that statutory power will violate the due process clause of the Constitution. *Gen. Latex & Chem. Corp. v. Phoenix Med. Tech.*, 765 F. Supp. 1246,

---

[4] The deponent, however, appears to have confused the sales figures for purchases Chestnut Ridge made from North Carolina suppliers. In his Errata Sheet, the deponent revised the testimony to a range of approximately $330,000 and $2.4 million in sales to North Carolina customers, representing between 2% and 12.5% of total annual sales of the company, figures consistent with Defendant's supporting brief. (Doc. 19, Ex. 32.)

4

1248–49 (W.D.N.C. 1991). This two-part inquiry collapses into one, where, as here, jurisdiction is asserted pursuant to N.C. Gen. Stat. § 1-75.4(1)(d), which North Carolina courts have interpreted to permit the exercise of personal jurisdiction to the outer limits allowable by the Due Process Clause of the United States Constitution. *See Dillon v. Numismatic Funding Corp.* 231 S.E.2d 629, 630-31 (N.C. 1977). Thus, when personal jurisdiction is determined under this statutory provision, the only question is "whether the defendant has the minimum contacts with North Carolina necessary to meet the requirements of due process." *A.R. Haire, Inc. v. St. Denis,* 625 S.E.2d 894, 899 (N.C. Ct. App. 2006) (citing *Sherlock v. Sherlock*, 545 S.E.2d 757, 760 (N.C. Ct. App. 2001)). This Court resolves all questions of fact and draws all reasonable inferences in the light most favorable to the plaintiff. *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997). In determining a motion to dismiss for lack of personal jurisdiction, the Court may postpone the decision and permit discovery, determine the motion on the basis of the pleadings and affidavits, or hold an evidentiary hearing. *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988).

A party invoking federal jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Although an evidentiary hearing has not been held, the parties did pursue jurisdictional discovery. As a result, in addition to the Complaint and CRF's initial brief in support of the Motion and accompanying affidavit of Mr. Ogburn, the parties have submitted excerpts of Ogburn's deposition. "This information is more similar to information presented at an evidentiary hearing than merely 'motion papers, supporting legal memoranda, and the relevant

5

allegations of a complaint.'" *Culp, Inc. v. Huntington Fabrics, Inc.*, 1:09CV611, 2011 WL 1230820, at *2 (M.D.N.C. Mar. 28, 2011) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Thus, Marx must prove by a preponderance of the evidence that this Court may exercise personal jurisdiction over CRF. *See AARP v. Am. Family Prepaid Legal Corp., Inc.*, 604 F. Supp. 2d 785, 797 (M.D.N.C. 2009) (applying preponderance of the evidence standard since parties conducted jurisdictional discovery); *Trivette v. Risher*, No. 7:07–CV–16–D, 2008 WL 516747, at *1 n.1 (E.D.N.C. Feb. 25, 2008) (same) (citing *Harrell v. Duke Univ. Health Sys., Inc.*, No. 7:07–813–HMH, 2008 WL 80122, at *1 (D.S.C. Jan. 7, 2008)).

A plaintiff may establish personal jurisdiction under either general or specific jurisdiction. General jurisdiction "requires 'continuous and systematic' contacts with a forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). A court may only assert general jurisdiction over a sister-state corporation when its affiliations with the forum state render them "essentially at home" in that state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2854 (2011). Conduct of "single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to [general jurisdiction]." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). Even "continuous activity of some sorts [by a corporation] within a state is not enough to support [general jurisdiction over the corporation]." *Id.* at 318. Only when the "continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities" may a court assert general jurisdiction over a corporate defendant. *Id.* "Broad constructions of general

jurisdiction should be generally disfavored." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993).

"Specific jurisdiction is more narrow, existing where the suit against the defendant arises out of [its] contacts with the forum state, or is related thereto." *IMO Indus., Inc. v. Seim s.r.l.*, 3:05-CV-420-MU, 2006 WL 3780422, at *2 (W.D.N.C. Dec. 20, 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984)). The Fourth Circuit Court of Appeals has synthesized into a three-part test the requirements of the due process clause where specific jurisdiction is at issue. The court must consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 216 (4th Cir. 2001). All three prongs of the test must be satisfied for this Court to assert jurisdiction over a defendant consistent with the Due Process Clause. *See Yates v. Motivation Indus. Equip. Ltd.*, 38 F. App'x 174, 179 (4th Cir. 2002)).

### III. DISCUSSION

**A.     CRF likely has insufficient contacts with the state to support general jurisdiction.**

There is likely insufficient evidence to support the exercise of general jurisdiction over CRF. CRF's contacts with North Carolina include all sales, purchases, and visits to the state, in addition to CRF's letters threatening suit against Marx for its purported unlawful competition. Of these North Carolina contacts, CRF's sales (between 2 and 12.5% of annual sales) and purchases (between 20 and 31.5% of annual purchases) are most compelling in terms of finding

7

"continuous and systematic" activity within the forum. Even so, courts differ on the requisite quantity or percentage of sales and purchases necessary in the forum to establish general jurisdiction. *See Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990) (declining to exercise general jurisdiction when a defendant's sales revenue was over 12%); *Nichols*, 991 F.2d at 1200 (less than 1% of defendant's purchases in forum deemed too insignificant to consider in general jurisdiction analysis). Because the exercise of specific jurisdiction is proper, however, the Court need not decide whether CRF's contacts, taken in the aggregate, render CRF "essentially at home" in North Carolina. *Goodyear*, 131 S. Ct. at 2854.

**B.    CRF is subject to specific jurisdiction in North Carolina.**

There is sufficient evidence to support the exercise of specific jurisdiction over CRF in the forum. The Court finds that the three prongs of the Due Process requirement are satisfied and that CRF is amenable to suit in North Carolina.

**1. CRF has purposefully availed itself of the privileges of conducting business in North Carolina.**

The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations and quotation marks omitted). This prong is only satisfied "when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on [his contacts with the forum]." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 623 (1st Cir. 2001) (citation omitted).

Here, the letters likely satisfy the Due Process requirement of purposeful availment. Cease-and-desist letters have been held to meet this requirement, because "letters are purposefully directed at the forum." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003); *See JHRG LLC v. StormWatch, Inc.*, 1:09CV919, 2011 WL 3111971, at *2 (M.D.N.C. July 26, 2011). Moreover, CRF's sales, purchases, and visits to North Carolina significantly bolster this Court's determination that CRF has "invoke[ed] the benefits and protections" of North Carolina law. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Even if the percentage of sales and purchases are not adequate to assert general jurisdiction over CRF, they nonetheless provide the necessary "minimum contacts" with North Carolina, such that CRF can "reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This Court thus finds that the letters in conjunction with the other North Carolina contacts show that CRF has purposefully availed itself of the privileges of conducting business in North Carolina.

**2. Marx's declaratory judgment action is sufficiently related to CRF's contacts with North Carolina.**

CRF's letters to Marx and additional North Carolina contacts are related to Marx's cause of action. When a controversy "arises out of" or is related to a defendant's contacts with the forum, the Supreme Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of *in personam* jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). Further, "even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of fair play and substantial justice is not thereby offended. *Burger King*, 471 U.S. at 477; *see also Nichols*, 991

F.2d 1195.

The demand letters CRF sent to Marx bear a direct and substantial connection with Marx's claims in that the declaratory judgment action was precipitated by Marx's receipt of them. As such, the action is derivative of the letters and the legal issues raised therein. In other words, the letters reveal a relationship among the parties, the forum, and the litigation. *Shaffer*, 433 U.S. at 204. Defendant relies heavily on *Woods Int'l, Inc. v. McRoy*, in its contention that the action does not sufficiently relate to the letters. *Woods Int'l, Inc. v. McRoy*, 436 F. Supp. 2d 744 (M.D.N.C. 2006). Defendant's argument, however, impermissibly conflates the second and third prongs of the Due Process analysis. (*See, infra*, "Section III, 3")

In the case at bar, this action is sufficiently related to CRF's sales, purchases, and visits to North Carolina, as CRF seeks to protect its existing North Carolina business from Marx's alleged unlawful competition. This indirectly attaches the parties' competition for North Carolina customers with Marx's action to have its rights declared by this Court. Moreover, even if these sales, purchases, and visits were each, by themselves, insufficiently related to the cause of action, they nonetheless provide support for relatedness when considered as a whole.

**3. Due Process permits the exercise of personal jurisdiction over CRF.**

It is constitutionally reasonable to exercise personal jurisdiction in light of the nature and quality of CRF's contacts in North Carolina. In determining whether the exercise of personal jurisdiction would be constitutionally reasonable, a defendant's contacts are "considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 417 U.S. 462, 476 (1985) (quoting *International Shoe*, 326 U.S. at 320). These factors may serve to "establish the reasonableness of jurisdiction

upon a lesser showing of minimum contacts than would otherwise be required," and they include (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies. *Id.* at 475; *see also Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939, 946 (4th Cir. 1994).

As already discussed, *supra*, CRF's contacts with North Carolina include the cease-and-desist (or anti-competitive demand) letters to Marx, sales to North Carolina customers, purchases from a North Carolina supplier, and annual employee-officer visits in North Carolina with customers. In considering constitutional reasonableness, several courts have held that letters threatening suit, *by themselves*, do not establish jurisdiction in a declaratory judgment action. In *Woods International*, for instance, declaratory judgment and tortious interference claims were dismissed in part because the court held that "a cease and desist letter *alone* is not a sufficient basis to establish personal jurisdiction."[5] *Id.* at 751 (emphasis added); *Yahoo! Inc. v. La Ligue*

---

[5]

In support of this conclusion, *Woods Int'l* relied on a Federal Circuit case, *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998). In *Red Wing Shoe*, a potential patent infringer brought action against a patentee for declaration of non-infringement. *Id.* The court there held that the patentee lacked sufficient contacts with the forum state, in part, because the patentee's cease-and-desist letter was insufficient to support exercise of personal jurisdiction "*without more.*" *Id.* at 1360 (emphasis added). In *Red Wing Shoe*, driven by the third prong of the Due Process analysis, the Federal Circuit explained:

> "principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness . . . . *Without more*, letters are not sufficient to satisfy the requirements of Due Process in declaratory judgment actions."

*Id.* at 1360 (quotation marks and citations omitted) (emphasis added); *see also JHRG LLC v. StormWatch, Inc.*, 2011 WL 3111971, at *2 (M.D.N.C. July 26, 2011) (citing *Dudnikov v. Chalk &*

*Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) ("A cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter."). The facts of this case, however, are readily distinguishable.

In *Woods International*, the defendant "did not attempt to solicit business in North Carolina or enter into any agreement or business relationship in North Carolina." 436 F. Supp. 2d at 751. Instead, the most significant contact the defendant had apart from the cease-and-desist letter was a "single $150 shipment of [the defendant's] products [that] was sold by one of [the defendant's] Indiana customers to a North Carolina resident at a trade show in Kentucky and was shipped to North Carolina." *Id.* at 750. This attenuated contact was insufficient, and the Court thus held that Due Process required "more" than just a single cease-and-desist letter to establish personal jurisdiction. *Id.* In this case, however, there are considerably "more" contacts with the forum state than the letters. Up to 12.5% of CRF's sales come from North Carolina-based customers, in competition with Marx. Up to 31.5% of CRF's purchases come from North Carolina suppliers, and CRF's employees or representatives have made regular business visits to maintain relationships with both customers and vendors. Constitutional reasonableness is satisfied, given these contacts.

Likewise, the factors set forth by the Supreme Court in *Burger King* weigh in favor of Marx. The burden on CRF to litigate in the forum would not be unconstitutionally great. Given CRF's significant commercial activities in North Carolina, such presence is relevant to its burden of being haled into court here. Additionally, CRF has already engaged in jurisdictional discovery and hired local counsel, a factor considered by the Fourth Circuit in *CFA Institute*, 551

---

*Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1082 (10th Cir. 2008)).

F.3d at 296. CRF thus cannot reasonably be surprised to find itself subject to suit in North Carolina. Moreover, North Carolina has a significant interest in resolving the dispute and providing effective means of redress to its residents threatened with litigation, especially when it relates to in-state competition for customers. *Burger King*, 471 U.S. at 474. "North Carolina and this District have strong interests in protecting the corporate entities that are contributing to the economic well-being of the area." *Richmar Dev., Inc. v. Midland Doherty Services, Ltd.*, 717 F. Supp. 1107, 1120 (W.D.N.C. 1989). Additionally, Marx's damages are in North Carolina, and CRF's in-state contacts relate to Marx's tortious interference claim. *See Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1069 (4th Cir. 1982). Marx also has a significant interest in receiving convenient and effective relief, particularly since the use of the IFP equipment may subject it to continuing liability to CRF. These factors weigh in favor of Marx, and the Court thus finds the assertion of personal jurisdiction over CRF constitutionally reasonable.

**C.     There is an adequate case or controversy sufficient to state a claim.**

Under N.C. Gen.Stat. §§ 1–253 and 1–254, "a declaratory judgment should issue (1) when it will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." *See Conner v. N.C. Council of State*, 716 S.E.2d 836, 846 (N.C. 2011) (citation omitted). An "actual controversy" is a " 'jurisdictional prerequisite" to proceeding under the Declaratory Judgment Act. *Gaston Bd. of Realtors, Inc. v. Harrison*, 316 S.E.2d 59, 61 (N.C. 1984) (citation omitted). "It is not necessary for one party to have an actual right of action against another for an actual controversy to exist which would support declaratory relief." *N.C.*

13

*Consumers Power, Inc. v. Duke Power Co.*, 206 S.E.2d, 178, 189 (N.C. 1974). However, more than anticipation of future litigation is required, and the Court must "be convinced that the litigation appears to be unavoidable." *Id.*

A declaratory judgment is proper here, because it will clarify the parties' rights, settle the legal dispute at issue, and afford the parties relief from uncertainty. In its Complaint, Marx seeks to have declared whether use of the equipment (*i.e.*, the equipment formerly belonging to IFP ) makes it liable for misappropriation of trade secrets. (Doc. 1-1, at 3.) There is a question of fact (or a mixed question of law and fact) as to whether CRF maintains protectable trade secrets in the use of the equipment, particularly as IFP represented to Marx that CRF has no such rights.

Further "an actual controversy exists where a plaintiff seeks a declaratory judgment in order to avoid the accrual of potential damages for prior actions." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 593 (4th Cir. 2004). Indeed, one purpose of a declaratory judgment is to prevent ongoing liability. *Id.* (citing *NUCOR Corporation*, 28 F.3d at 577). This affords parties relief from uncertainty and insecurity with respect to their legal rights and relations. *Id.* In *Volvo*, an actual controversy was held to exist, because plaintiff "possessed a reasonable apprehension of a multiplicity of litigation and of liability for ongoing damages." *Id.* at 593. Here, as in *Volvo*, use of the equipment in question may subject Marx to ongoing damages. In the first letter that CRF's counsel sent to Marx, counsel wrote, "the IFP Equipment is one of the central subjects of an ongoing lawsuit between [CRF], IFP and various other parties, and any use of that equipment for the purposes of producing and marketing fire-resistant foam products may subject you or Marx to civil liability." (Doc 1-1, at 14.)   Marx, in fact, had already "engaged former IFP employees . . . . to assist in operating the Equipment in order that

Marx manufacture 'fire resistant' foam." (Doc. 19, at 2.) If Marx used the equipment at issue without the ability to bring a declaratory judgment action, a cloud of uncertainty would hang over the controversy. CRF could "sleep on its rights" until potential monetary damages accumulated before bringing suit. This supports the Court's determination that an actual controversy exists, requiring a clearing of the air.

The Court finds that litigation between the parties is unavoidable, not merely anticipated. CRF maintains that litigation is not inevitable and that "far from indicating a specific present intention to bring a lawsuit against [Marx], those letters simply reflect [CRF's] concerns about the potential misuse of its intellectual property and its reasonable requests for assurances." (Doc. 4, at 22.) However, CRF has already initiated litigation against IFP over the equipment at issue and has made clear in its letters to Marx that "as the Pennsylvania action demonstrates, [CRF] will not shy away from aggressively protecting its rights through litigation, should such a course become necessary." (Doc. 7, at 16.) Further, CRF claimed, "If we do not hear from you by that date, [CRF] will take all actions necessary to protect its proprietary interests." *Id.* Marx, however, did not provide a response or the assurances CRF demanded.

The mere apprehension or threat of litigation, by letter or otherwise, are generally not found to establish an actual controversy. See *Gaston Bd. of Realtors, Inc. v. Harrison*, 316 S.E.2d 59, 62 (N.C. 1984) ("Mere apprehension or the mere threat of an action or a suit is not enough."); *accord Klingspor Abrasives, Inc. v. Woolsey*, No. 5:08CV-152, 2009 WL 2397088, at *3 (W.D.N.C. July 31, 2009) ("Letters threatening suit are generally not found to establish an actual controversy.") (citing *Nat'l Travel Servs., Inc. v. State ex rel. Cooper*, 569 S.E.2d 667, 669 (N.C. Ct. App. 2002)). However, in all these cases, there was no evidence of potential

ongoing liability while the alleged wrongdoer waited for suit. In *Klingspor Abrasives*, the Court noted the usefulness of declaratory judgment to prevent damages accruing, but found that "since Woolsey has already been terminated, Klingspor is not accruing further damages by waiting for Woolsey to file suit." 2009 WL 2397088, at *4. In *Nat'l Travel Services*, the court held that "allowing a declaratory judgment to be rendered in this case would arguably not settle anything between the parties." 569 S.E.2d 667 at 669.

Here, a declaratory judgment would serve to clarify the parties' rights and afford relief from uncertainty in what appears to be unavoidable litigation. The Court, therefore, finds that it may assert jurisdiction over CRF and that an actual controversy exists sufficient to support a claim for declaratory relief.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss is hereby **DENIED.**

Signed: October 12, 2012

Richard L. Voorhees
United States District Judge